2006-NMCA-005

126 P.3d 1145

**CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**SANTA FE HOTEL GROUP, LLC, a New Mexico limited liability company, Defendant–Appellant.**

**No. 25,192.**

Court of Appeals of New Mexico.

Nov. 14, 2005.

Bingham, Hurst, Apodaca, & Wile, P.C., Lillian G. Apodaca, Albuquerque, for Appellee.

Scheuer, Yost, & Patterson, P.C., Donald A. Walcott, Christopher M. Grimmer, Santa Fe, for Appellant.

## OPINION

PICKARD, J.

{1} This case raises the issue of the type of evidence required to foreclose on a materialmen's lien. The landowner contends that our cases require either direct evidence that the materials supplied were actually used in the landowner's project or evidence of actual delivery of the materials to the landowner's land, from which an inference of such use may be drawn. In addition, the landowner contends that the evidence concerning the completion of the project was sufficiently ambiguous that the materialman did not prove that the project was substantially completed less than 90 days prior to the filing of the lien, and therefore the lien fails on that ground. We hold that direct evidence is not required, that circumstantial evidence is sufficient, and that substantial evidence supported the trial court's decision foreclosing the lien, both on the issue of use of the material in the landowner's project and on the issue of filing the lien within 90 days of the project's completion.

## FACTS AND PROCEEDINGS

{2} Consolidated Electrical Distributors, Inc. (CED), is the materialman in this case. Santa Fe Hotel Group, LLC (Hotel), is the landowner. Vantage Electric Corporation (Vantage) is a contractor that contracted with Hotel to purchase and install lighting in Hotel's parking lot. Vantage completed the job, and Hotel paid Vantage in full. Vantage, however, did not pay CED, and CED filed a claim of lien against Hotel's property.

{3} It is undisputed that Vantage ordered lighting fixtures from CED that were to be used in Hotel's project. The only witness to testify for CED was its outside salesperson, Matthew Gordon. Gordon testified that the fixtures were delivered to Vantage in Albuquerque, and not to Hotel's location in Santa Fe. However, when it became clear that CED was going to have to file a claim of lien, Gordon went to Santa Fe to ascertain that CED's fixtures were used in Hotel's project. Gordon took pictures that were admitted into evidence. When asked whether there was "any doubt in your mind that these are the product that CED provided to the project," Gordon answered, "No doubt at all." CED also introduced evidence of the site lighting submittals it prepared to show to the City of Santa Fe for Hotel's project and purchase orders consistent therewith, all utilizing the same particular type of light fixture.

{4} On cross-examination, Gordon testified that Vantage had other jobs in progress at the same time as Hotel's job and that Vantage had ordered the same type of light in the past. Gordon also admitted that he did not go to the job site while the lights were being installed and he did not deliver the lights to the job site. The last questions to him on cross-examination established that he took pictures of the lights in Hotel's parking lot and that the lights "are of the same type that were originally ordered by Vantage." However, he was not asked whether this observation was the only basis for his testimony on direct examination that there was no doubt in his mind that the lights on Hotel's property were the same lights provided by CED. There was also no evidence introduced indicating that Vantage ordered the type of lights used in Hotel's project for other projects that were in progress at the same time as Hotel's project.

{5} Turning to the date of completion of the project, evidence was presented that the lights were delivered to Vantage on Thursday, April 19, 2001; that on Good Friday, April 20, CED was notified that there was damage to one of the lights; that Vantage was not going to begin the job until the following week; and that the job would take four or more days to complete. The lien was filed on July 25, 2001. The week following April 20 began with Monday, April 23, and if the job took four days, it would have been complete on Thursday, April 26. Ninety days from April 26 expired on July 25.

{6} The trial court found and concluded that the lighting fixtures that CED sold for use in Hotel's project were in fact used in Hotel's project and that CED's claim of lien was timely filed. Judgment was entered in favor of CED, and this appeal follows.

## DISCUSSION

### Standard of Review

{7} Hotel sets forth the following proper standard of review based on *Public Service Co. of New Mexico v. Diamond D Construction Co.*, 2001–NMCA–082, ¶ 16, 131 N.M. 100, 33 P.3d 651: "When reviewing the sufficiency of the evidence, we view the facts in the light most favorable to the decision below[, and we] resolve all conflicts and, importantly, indulge in all inferences to support that decision." *Lujan ex rel. Lujan v. Casados–Lujan*, 2004–NMCA–036, ¶ 15, 135 N.M. 285, 87 P.3d 1067 (citation omitted). Hotel, however, goes on to raise the legal question of whether our cases require direct evidence to support the required elements before a lien may be foreclosed. We review legal questions de novo. *Blake v. Pub. Serv. Co. of N.M.*, 2004–NMCA–002, ¶ 5, 134 N.M. 789, 82 P.3d 960.

### Materials Actually Used in Project

{8} Hotel relies on *Panhandle Pipe & Steel, Inc. v. Jesko*, 80 N.M. 457, 459, 457 P.2d 705, 707 (1969), and *Tabet v. Davenport*, 57 N.M. 540, 542, 260 P.2d 722, 723–24 (1953), for the proposition that direct evidence is required. In particular, Hotel relies on the following language from *Tabet:* "one who asserts a lien for materials must not only allege and prove that he sold the materials for use in the particular building, but that they were actually used therein." *Id.* In fact, however, these cases and this language stand only for the proposition that to establish a valid lien a lien claimant must provide evidence that the material was actually used in the project. They say nothing about the type of evidence required.

{9} Hotel claims that permitting an inference of actual use from proof that the materials were sold for use in a particular project would effectively eliminate the second part of the *Tabet* test, requiring that the materials actually be used. Hotel supports its argu-

ment with language from *Panhandle Pipe & Steel, Inc.* and *Tabet,* distinguishing the rule in California and Colorado, which is to the effect that materials must be actually used in particular premises, from the rule in Minnesota and New York, rejected in New Mexico, which is to the effect that materials need only be delivered to the contractor for use in a particular project even if there is no proof that the same materials are so used. *Panhandle Pipe & Steel, Inc.*, 80 N.M. at 459, 457 P.2d at 707; *Tabet*, 57 N.M. at 542–43, 260 P.2d at 723–24. The Court in *Panhandle Pipe & Steel, Inc.* indicated that if it was proved that the materials were actually delivered to the site of the project, then perhaps it could be presumed that the materials were used in the project, but that proof of delivery to the contractor alone was insufficient. 80 N.M. at 459, 457 P.2d at 707.

{10} In this case, however, there was more evidence than simply delivery to the contractor, Vantage. There was also evidence that the lights were ordered for Hotel, inferences from the evidence that such lights were not used in other contemporaneous projects, and evidence from Gordon that there was no doubt in his mind that the lights incorporated into Hotel's project were the lights CED supplied to Vantage. In arguing that Gordon's testimony on cross-examination (that the lights at Hotel were similar to the lights CED supplied) nullified Gordon's testimony on direct (that he had no doubt that they were the same lights), Hotel is asking us to substitute our view of the evidence for that of the fact finder. This we will not do. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177 ("[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder.").

{11} Hotel appears to raise a policy issue along the following lines. Liens are remedial, and the statutes should be liberally construed to accomplish the legislative end; however, because landowners will often have paid the contractors and should not have to pay twice for the same materials, courts should require strict proof both that the materials were ordered for the particular project and that they were actually used in it.

In this connection, Hotel contends that the testimony of Vantage is required because only Vantage knew that the materials ordered were actually used in Hotel's project.

{12} We understand and appreciate Hotel's contention that remedial laws do not necessarily require the facts to be viewed in any particular way. *Cf. State ex rel. Martinez v. Lewis*, 116 N.M. 194, 209–10, 861 P.2d 235, 250–51 (Ct.App.1993) (indicating that liberal application of law does not apply to review of facts, to which appellate court applies same substantial evidence standard in all cases). Nonetheless, our courts have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Nava v. City of Santa Fe*, 2004–NMSC–039, ¶ 10, 136 N.M. 647, 103 P.3d 571. And as we have noted when discussing the standard of review, we indulge in all reasonable inferences in support of the trial court's decision. *See id.*

{13} As to the alleged requirement of strict proof, even in criminal cases, where chain of custody of important evidence is at issue, our cases indicate that a knowledgeable witness can testify that the evidence presented in court is the same as that connected with the case without tracing each link in the chain of custody. *See State v. Chavez*, 84 N.M. 760, 761–62, 508 P.2d 30, 31–32 (Ct.App.1973). A fortiori, the rule should not be more strict in civil cases. Taking the criminal-case rationale a step further, we similarly reject Hotel's argument that direct evidence is required. Even in cases involving the most severe of punishment, substantial evidence may be comprised of either direct or circumstantial evidence. *See State v. Reyes*, 2002–NMSC–024, ¶ 43, 132 N.M. 576, 52 P.3d 948.

{14} Thus, we hold that, as a legal matter, direct evidence is not required to establish the required elements for a valid lien. CED was not required to present the testimony of witnesses from Vantage, showing that the lights it received from CED were incorporated into the project Vantage completed at Hotel's premises. It was sufficient that a representative from CED testified that Vantage ordered certain lights from

CED for Hotel's project, that the lights were delivered to Vantage, and that lights of the same type were actually on light posts on Hotel's premises, such that the representative had no doubt in his mind that they were the lights supplied. This evidence was such relevant evidence that a reasonable mind would find adequate to support a conclusion that the lights CED delivered to Vantage were incorporated into Hotel's premises.

{15} Finally, our holding is not inconsistent with *Tabet* or *Panhandle Pipe & Steel, Inc. Tabet* involved plumbing and building supplies that were ordered for several houses and which were delivered to a plumbing business or to one of the lots on which the houses were to be built. 57 N.M. at 540–41, 260 P.2d at 722–23. The trial court found that the materials were allocated to the particular houses at the time of delivery "or shortly thereafter" and that the materials "or their equal" were actually used in the houses, thereby implicitly stating that the court could not find that the same materials were allocated to a particular house and used therein. *Id.* at 541–42, 260 P.2d at 723. Under these circumstances, the judgment foreclosing the lien had to be reversed. *Id.* at 543, 260 P.2d at 724. In contrast, in our case, there was a finding, based on substantial evidence, that the lights were ordered for Hotel and were used in Hotel's project.

{16} *Panhandle Pipe & Steel, Inc.* involved an order for pipe that was sold to a well driller for two farms, one of which was the defendant's. 80 N.M. at 457, 459, 457 P.2d at 705, 707. The trial court presumably found that, because there was another farm for which a well would be drilled and pipe used from the same delivery, the plaintiff had not proved that the pipe was used in the defendant's well. *Id.* at 458, 457 P.2d at 706. The Supreme Court viewed the evidence in a light most favorable to support the trial court's findings and ruled that they would be affirmed. *Id.* at 460, 457 P.2d at 708. This case does not mean that a trial court could not find differently on different facts. *See Las Cruces Prof'l Fire Fighters*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177 ("The question is not whether substantial evidence exists to support the opposite re-

## Timely Filing of Lien

{17} Hotel also contends that the lien was not proved to have been timely filed. The law requires that the lien be filed within 90 days of completion of the project. NMSA 1978, § 48–2–6 (1979); *see also Garrett Bldg. Ctrs., Inc. v. Hale,* 95 N.M. 450, 453, 623 P.2d 570, 573 (1981) (stating that the lien must be filed within the statutory period or the remedy is unavailable).

{18} Hotel relies on the facts that the agreement between Vantage and Hotel provided that Vantage would send Hotel an invoice when the project was completed, that the invoice was sent in the last week of April, and that counsel for CED acknowledged in her closing argument that the project was "probably completed" on April 25. However, as pointed out in the factual recitation above, there was evidence that the project was not completed until April 26. Again, we do not reweigh the evidence, substitute our judgment for that of the fact finder, or review to determine whether the evidence would have supported a result different from that found below. *See Las Cruces Prof'l Fire Fighters,* 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. There was substantial evidence that the lien was timely filed 90 days from April 26 on July 25.

## CONCLUSION

{19} The judgment of the trial court is affirmed.

{20} **IT IS SO ORDERED.**

WECHSLER and KENNEDY, JJ., concur.