2006-NMCA-095

141 P.3d 542

John D. SMYERS, Petitioner–Appellant,

v.

**CITY OF ALBUQUERQUE and City of Albuquerque Personnel Board, Respondents–Appellees.**

No. 25,774.

Court of Appeals of New Mexico.

June 30, 2006.

Lester C. Cannain, Albuquerque, NM, for Appellant.

Robert M. White, City Attorney, Randy M. Autio, Deputy City Attorney, Shelley B. Mund, Assistant City Attorney, Albuquerque, NM, for Appellees.

**OPINION**

CASTILLO, Judge.

{1} John Smyers appeals his termination from employment with the City of Albuquerque (City). We affirm.

**I. BACKGROUND**

{2} Smyers was a technical program manager in the Public Works Department of the City. On three separate occasions in early October 2002, two witnesses saw Smyers in his office exhibiting behavior consistent with that of a person masturbating. On October 9, 2002, Smyers was placed on administrative leave. An external investigator conducted an investigation and interviewed all parties involved. Smyers was terminated from his employment with the City in November 2002 for masturbating in his office, possessing and dubbing pornography at work, and compulsively using the Internet for personal use. Smyers grieved his termination, and a Personnel Hearing Officer (PHO) held a grievance hearing in May 2003. Although the PHO found that Smyers' personal Internet usage was not detrimental to his job performance, the PHO's recommendation was to uphold Smyers' termination. Smyers submitted written exceptions to the PHO's report.

{3} The City of Albuquerque Personnel Board (Board) met twice to consider the Smyers case. At a meeting held on August 20, 2003, three members were present and heard oral arguments on the issues related to Smyers' grievance hearing, the PHO's report, and Smyers' written exceptions to the PHO's report. The Board voted two to one to uphold the PHO's recommendation. At a meeting held on September 17, 2003, four members were present. At this meeting, the Board explained that it had adopted the PHO's conclusions of law when the Board had accepted the PHO's recommendation at the August 20 meeting. No vote was taken at the September 17 meeting.

{4} Smyers filed a petition for writ of certiorari to the district court for review of the Board's decision upholding his termination. Smyers argued that the Board acted without authority and that its findings were not supported by substantial evidence. The district court upheld the Board's decision. We granted certiorari.

**II. DISCUSSION**

**A. Standard of Review**

{5} "In reviewing a decision of the Personnel Board, we apply a whole-record standard of review." *Selmeczki v. N.M. Dep't of Corr.*, 2006–NMCA–024, ¶ 13, 139 N.M. 122, 129 P.3d 158. In so doing, "[w]e 'conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal.'" *Gallup Westside Dev., LLC v. City of Gallup*, 2004–NMCA–010,

¶ 10, 135 N.M. 30, 84 P.3d 78 (quoting *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806). "[W]e independently review the entire record of the administrative hearing to determine whether the Board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Martinez v. N.M. State Eng'r Office*, 2000–NMCA–074, ¶ 31, 129 N.M. 413, 9 P.3d 657; *see* Rule 1–075(Q)(1)–(4) NMRA. "An administrative ruling is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record, and we must avoid substituting our own judgment for that of the agency." *Selmeczki*, 2006–NMCA–024, ¶ 13 (internal quotation marks and citation omitted). Whether the Board's actions were contrary to law is a question reviewed de novo. *See id.* The party challenging the ruling has the burden to demonstrate grounds for reversal. *Id.*

## B. Action and Composition of the Board

{6} Smyers contests the validity of the Board's action regarding his appeal. Citing to *Zamora v. Village of Ruidoso Downs*, 120 N.M. 778, 780–81, 907 P.2d 182, 184–85 (1995), Smyers contends that the City's merit system ordinance gives him certain contractual and statutory rights, which have been violated. Specifically, Smyers asserts that Section 3–1–25(C)–(D) of the City's merit system ordinance entitles him to have all five duly appointed members, with unexpired terms of office, review his appeal and render a decision on it. *See* Albuquerque, N.M., Rev. Ordinances (Alb.Ord.) ch. 3, art. 1, § 25(C)–(D) (1998). According to Smyers, there were three separate violations of the ordinance, which invalidated any action purported to have been taken by the Board. First, Smyers contends that Section 3–1–25 of the City's merit system ordinance requires that any action on his appeal be taken by the entire five-member Board. Second, he maintains that at the September 17 meeting, only two of the members present were serving unexpired terms of office. Third, there was only a total of four duly appointed members of the Board on August 20. We begin with

Smyers' contention that the entire Board had to act on his appeal.

{7} The City is a home rule municipality, and the Albuquerque City Council, under its home rule municipal power, enacted a merit system ordinance that governs the hiring, promotion, discharge, and general regulation of City employees. *See* Alb. Ord. ch. 3, art. 1, §§ 1–27 (1974, as amended through 2005). Section 3–1–4(A) of the City's merit system ordinance states that the Board "shall be ... composed of five members." Section 3–1–4(C) of the merit system ordinance states that "[e]xcept as provided in this article, ... the organizational structure of the Board shall be governed by [the public board ordinance Sections] 2–6–1–1 et seq." *See* Alb. Ord. ch. 2, art. 6, §§ 1–1 to –5 (1974, as amended through 2003). Section 2–6–1–4(B)(5) directs that a majority of all public board members shall constitute a quorum and further provides that final action may be taken by "the majority of the members present at any meeting." For interpretation of ordinances, we follow the rules of statutory interpretation. *Cadena v. Bernalillo County Bd. of County Comm'rs*, 2006–NMCA–036, ¶ 7, 139 N.M. 300, 131 P.3d 687. Where there are several sections of an ordinance involved, we read them together to give effect to all sections. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. When the words used are plain and unambiguous, we give a statute its literal reading, unless that reading would lead to an injustice, absurdity, or contradiction. *Atencio v. Bd. of Educ.*, 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982). The ordinances are not ambiguous. Section 3–1–4(C) directs that Section 2–6–1–4 shall govern the organizational structure of the Board. A plain reading of Section 2–6–1–4(B)(5) supports the conclusion that the Board consists of five members but that only a quorum need be present at a meeting in order to act. A quorum of the Board was present at both meetings, and final action was taken by majority vote of the quorum. The Board complied with the City ordinance. There is no requirement that final action be taken by all five members of the Board; therefore, Smyers' argument fails.

{8} Next we consider the effect of an expired term on Board membership. We agree with Smyers that the Board consists of five members and that the term of each member is two years. Alb. Ord. § 3–1–4(A). Smyers points to two memoranda of appointment, which indicate that by the time of the meeting held on September 17, the terms of two members of the Board had expired. There is no indication in the record that these members were removed or replaced before the September 17 meeting; in fact, they attended the meeting as members of the Board.

{9} We have two problems with Smyers' position. First, it does not appear that the Board took any dispositive action at its meeting on September 17. The minutes reflect that the Board merely announced that the PHO's conclusions of law were previously adopted—at the August 20 meeting, when the Board accepted the PHO's recommendation. Even if the announcement were to be interpreted as a Board action, Smyers fails to cite authority to support his contention that the acts taken during this holdover period are invalid. He merely asserts that the ordinance requires the Board to consist of five members, and he assumes that a position automatically becomes vacant once the term of a member expires. We disagree.

{10} As pointed out by the City and as we explained above, the organizational structure of the Board is governed by Sections 2–6–1–1 to –5. Smyers argues that the section of the ordinances governing terms, Alb. Ord. § 3–1–4(A), controls over the section of the ordinance that governs holding over, Alb. Ord. § 2–6–1–3(B)(6). However, a reading of the ordinances together, giving meaning to all parts, does not support Smyers' argument. *See High Ridge Hinkle Joint Venture,* 1998–NMSC–050, ¶ 5; *Cadena,* 2006–NMCA–036, ¶ 7.

■ {11} We turn to Section 2–6–1–3(B)(6), which provides that except for certain instances that are not pertinent to our case, every public board member shall hold office until a successor has been duly qualified. There is a difference between term of office and tenure in office. *Block v. Vigil–Giron,* 2004–NMSC–003, ¶ 6, 135 N.M. 24, 84

P.3d 72. A term is a fixed period of time an appointee is authorized to serve in office; the term is established by law and is normally specified in the letter of appointment. *Id.* Tenure is the time the appointee actually serves in office. *Id.* The tenure may be shorter or longer than the term. *Id.* In this case, the tenure of the office of those members with expired terms continued, notwithstanding the length of the terms.

■ {12} The City also cites to the New Mexico Constitution and case law. *See* N.M. Const. art. XX, § 2. "[E]very officer, unless removed, holds office until his successor qualifies[.]" *Haymaker v. State ex rel. McCain,* 22 N.M. 400, 405, 407, 163 P. 248, 250 (1917) (stating that the holdover provision serves as an important public policy by ensuring that there will always be someone competent to perform the duties belonging to the office). Smyers counters by stating that the constitutional provision regarding holdovers only applies to officers and not to Board members. Although we look to the New Mexico Constitution and case law because they provide the public policy bases for ordinance provisions like Section 2–6–1–3(B)(6), our decision is based on our interpretation of the City's ordinances. The applicable ordinance plainly states that a Board member remains in office until a successor has been duly qualified. Alb. Ord. § 2–6–1–3(B)(5). Accordingly, we hold that the validity of whatever action the Board took at its September 17 meeting was not affected by the expired terms of two of the members.

{13} We now turn to Smyers' last argument regarding the composition of the Board. He points to the minutes from the August 20 Board meeting; these minutes list the names of only four Board members. Smyers contends that this is proof that there were only four duly appointed members of the Board when it took action on August 20. Smyers claims that because the City's merit system ordinance requires a five-member Board, any action taken by the Board with fewer than five duly appointed members is invalid. Again Smyers fails to cite to any legal authority to support his argument and relies on his interpretation of Section 3–1–

4(A) of the City's merit system ordinance, which authorizes a five-member Board.

{14} While we do not agree there is conclusive evidence of a four-member Board, the resolution of this fact question is not necessary to the resolution of the legal issue. Even if we presume that there was a vacancy on the Board at the time of the August 20 meeting, Smyers' argument fails. "[T]he mere existence of a vacancy or vacancies does not prevent the board from acting ..., as long as the quorum remains." *E. Poinsett County Sch. Dist. No. 14 v. Massey*, 317 Ark. 219, 876 S.W.2d 573, 576 (1994) (internal quotation marks and citation omitted). It is imperative that the boards responsible for public duties be able to continue to perform, despite a vacancy. *See U.S. Vision, Inc. v. Bd. of Exam'rs for Opticians*, 15 Conn.App. 205, 545 A.2d 565, 566 (1988) (holding that the rulings of two members were legal and binding where there was one vacancy on the three-member board). There is no good reason for denying a public board the right to meet, deliberate, and act, as long as a sufficient number of members, authorized by law to act, are appointed and qualified. *Liquefied Petroleum Gas Comm'n v. E.R. Kiper Gas Corp.*, 229 La. 640, 86 So.2d 518, 520–21 (1956) (stating that three members of a five-member board could legally act, despite two vacancies). In the present case, a three-member quorum is a quorum of the Board, irrespective of whether we use a four-member Board or a five-member Board to calculate the quorum. *See* Alb. Ord. § 2–6–1–4(B)(5). Therefore, we need not address the question of whether a quorum is calculated based on the number of members required by ordinance or whether a quorum is calculated based on the number of members who have been duly appointed. Consequently, we hold that the Board consisting of a three-member quorum was properly constituted and that the Board's action regarding Smyers' termination was valid.

## C. Substantial Evidence

{15} Smyers also contends the Board's decision is not supported by substantial evidence when the whole record is considered. The termination was based on two grounds: (1) masturbating at work and (2) possessing and dubbing pornography at work. We begin with the first ground. Smyers' main argument is that absent direct evidence by a person who actually saw Smyers' hand on his genitals, there was insufficient evidence to support the PHO's finding that Smyers masturbated at work. We reject this argument.

{16} The PHO found that two other City employees witnessed Smyers masturbating in his office and that this was corroborated by Smyers' own testimony. These findings are supported by the following evidence in the record. In early October 2002, two witnesses, on separate occasions, observed behavior that they perceived as Smyers masturbating in his office. Specifically, one witness saw Smyers staring oddly at his computer screen as his head rocked back and forth. The next day, a second witness observed similar activity on Smyers' part. She saw Smyers' arm and shoulder moving in a rhythmic cadence, and she noticed that he had a glazed look in his eyes as he stared at the front of his desk. Later that day, the second witness entered Smyers' office. She startled him, and she heard a jerky banging noise on the belly drawer of Smyers' desk. Smyers then stood up, and the witness observed that Smyers' pants were unzipped. Smyers zipped up his pants and left the office. The record also contained the initial investigator's notes, which stated that Smyers denied masturbating on the alleged dates but that he admitted to masturbating at work on other occasions. Smyers denied making these statements.

{17} Circumstantial or direct evidence can amount to substantial evidence. *Consol. Elec. Distribs., Inc. v. Santa Fe Hotel Group, LLC*, 2006–NMCA–005, ¶ 13, 138 N.M. 781, 126 P.3d 1145. Although no one witnessed Smyers' hand directly on his genitals, reasonable inferences can be made from the activity described by the witnesses. We accept the reasonable inferences made by the fact-finder. *See Sheraden v. Black*, 107 N.M. 76, 78, 752 P.2d 791, 793 (Ct.App.1988). These inferences support the PHO's conclusions. While we understand that Smyers

challenged the content of the notes by the initial investigator, it is up to the fact-finder to evaluate this information. The PHO weighed the evidence, decided who were credible witnesses, and based his recommendation on these assessments. *See Apex Lines, Inc. v. Lopez,* 112 N.M. 309, 312, 815 P.2d 162, 165 (Ct.App.1991). We will not substitute our judgment for that of the fact-finder. *See Selmeczki,* 2006–NMCA–024, ¶ 13.

{18} Now we turn to the second ground. The PHO found that Smyers did possess and dub pornography at the work site. In support of this, the record discloses that Smyers himself admitted that he brought pornographic material to the workplace and used office equipment to dub the material. Additionally, four witnesses stated they had observed pornographic material in Smyers' office. The record contains sufficient evidence to support the PHO's recommendation to uphold Smyers' termination.

## III. CONCLUSION

{19} The Board's decision was neither procedurally nor substantively defective, and there was substantial evidence to support the termination. We therefore affirm.

{20} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.