This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36883**

**IN THE MATTER OF THE ENVIRONMENTAL HEALTH DEPARTMENT'S PETITION TO ADOPT A NEW REGULATION, 20.11.39 NMAC, "PERMIT WAIVERS AND AIR QUALITY NOTIFICATIONS FOR CERTAIN SOURCE CATEGORIES" AND TO ADOPT RELATED AMENDMENTS 20.11.41 NMAC, "CONSTRUCTION PERMITS."**

**CITY OF ALBUQUERQUE, ENVIRONMENTAL HEALTH DEPARTMENT,**

Petitioner-Appellee,

v.

**GEORGIANNA E. PEÑA-KUES,**

Interested Party-Appellant,

and

**ALBUQUERQUE-BERNALILLO COUNTY AIR QUALITY CONTROL BOARD,**

Intervenor-Appellee.

**APPEAL FROM ALBUQUERQUE-BERNALILLO COUNTY AIR QUALITY CONTROL BOARD**
**Felicia Orth, Hearing Officer**

Atler Law Firm, PC
Timothy J. Atler
Albuquerque, NM

Esteban A. Aguilar, Jr., City Attorney
Carol M. Parker, Assistant City Attorney
Albuquerque, NM

for Petitioner-Appellee

Georgianna E. Peña-Kues
Albuquerque, NM

Pro Se Appellant

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Intervenor-Appellee

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}**   Appellant Georgianna E. Peña-Kues appeals from the Albuquerque-Bernalillo County Air Quality Control Board's (the Board) approval and implementation of 20.11.39 NMAC (Part 39) and amendments to 20.11.41 NMAC (Part 41), arguing that the Board's decision was arbitrary and capricious, an abuse of discretion, and contrary to law. Finding no error by the Board, we affirm.

**BACKGROUND**

**{2}**   In August 2017, the City of Albuquerque's Environmental Health Department (the Department) filed a petition with the Board requesting that the Board adopt a new regulation, creating Part 39, and amend sections of Part 41. The proposed changes would implement a process similar to that employed by the state, eliminating the permitting requirements for most gas stations and emergency generators for new construction, as required under Part 41, and allowing qualified gas stations and emergency generators to apply for an "Air Quality Notification" (AQN) with the Department, instead. The changes, the Department claimed, would alleviate the requirement that operators of gas stations and emergency generators go through the lengthy, full-blown air quality construction permit process, while continuing to "impos[e] the same effective and prescriptive requirements" on them.

**{3}** The Board scheduled a rulemaking hearing on the Department's petition and assigned a hearing officer who issued a prehearing order requiring the Department and all other interested parties to file entries of appearances and submit notices of intent to present technical testimony. The Department published notice of the hearing and emailed notice to stakeholders on the Board's list-serve. Appellant, as an interested party, filed a timely notice of intent indicating that she sought to submit testimony in opposition to the Department's petition. Additionally, the Department filed its own notice of intent, in which it identified five expert witnesses in support of the petition, provided qualifications and written testimony for each of the five expert witnesses, and attached public comments received by the Department, as well as the Department's responses to those comments.

**{4}** The Board held the rulemaking hearing on November 8, 2017, at which time the Department presented and the Board admitted the qualifications and written testimony of the five expert witnesses. The experts each gave a short summary of his or her testimony and then were cross-examined by the Board and Appellant. Upon completion of the hearing, the Board adopted Part 39, as well as the amendments to Part 41. This appeal followed.

## DISCUSSION

**{5}** On appeal, Appellant argues that the Board's decision should be reversed because it was (1) arbitrary and capricious and an abuse of discretion, and (2) contrary to law. *See* NMSA 1978, § 74-2-9(C) (1992) (providing that a decision by an administrative agency shall be set aside "if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law"). We address each of Appellant's arguments in turn.

### I. The Board's Decision Was Not Arbitrary and Capricious or an Abuse of Discretion

**{6}** "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. We review the whole record in the light most favorable to the Board's decision to determine whether substantial evidence supports the decision. *See Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 1984-NMSC-042, ¶¶ 13, 14, 101 N.M. 291, 681 P.2d 717. "To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Nat'l Council on Comp. Ins. v. N.M. State Corp. Comm'n*, 1988-NMSC-036, ¶ 8, 107 N.M. 278, 756 P.2d 558. Furthermore, "[a]n agency abuses its discretion when

its decision is not in accord with legal procedure or supported by its findings, or when the evidence does not support its findings [or] . . . when its decision is contrary to logic and reason." *Oil Transp. Co. v. N.M. State Corp. Comm'n*, 1990-NMSC-072, ¶ 25, 110 N.M. 568, 798 P.2d 169 (citation omitted).

**{7}** Appellant first argues that the Board's decision was arbitrary and capricious and an abuse of discretion because the evidence was insufficient to support its decision. Appellant's concerns about the sufficiency of the evidence fall into two categories. First, Appellant contends that the Department's testimony that the existing oversight requirements for permitting the construction of gas stations and emergency generators were burdensome and unsustainable is in conflict with other testimony presented, including testimony that (1) the regulations which protect air quality from gas station and emergency generator emissions are very prescriptive, leaving little discretion in applying them; (2) only four of the 522 air quality complaints received by EHD in 2016 were related to gas stations or emergency generators; (3) only five appeals involving the Department have come to the Court of Appeals in the last twenty-one years; and (4) no active oversight of gas stations takes place on a regular basis because EPA requirements already in place adequately address air quality concerns. Second, Appellant claims that the testimony related to the dangers of benzene was not supported by sufficient data, including data related to the concentration and length of exposure and proximity to the source, to allow the Board to properly "quantify adverse health effects due to long-term exposure to toxins such as benzene immediately adjacent to [g]as [s]tations."

## A.      The Evidence Was Sufficient to Support the Board's Conclusion That the Department's Proposal Is More Efficient

**{8}** Appellant contends that the Department did not present facts that support its claim that the oversight requirements for permitting the construction of gas stations and emergency generators were overly burdensome, justifying the adoption of Part 39 and amendment to Part 41. While she does not specifically say so, we interpret Appellant's argument as a challenge to the Board's conclusion that the Department's request to adopt Part 39 and amend Part 41 "is in the public interest because it achieves air quality protections by a more efficient method that allows [the Department] to allocate its resources more wisely."

**{9}** Our review of the record reveals that the Department presented testimony in support of its petition from Israel Tavarez, its permitting division manager. Mr. Tavarez testified that "the permit process [for gas stations and emergency generators] is very resource-intensive," those permits make up sixty-two percent of the Department's active permits (232 gas stations and 445 emergency generators), and continuing under the current system is unsustainable. Mr. Tavarez explained that, while taking a significant amount of staff time, gas stations and emergency generators generate minimal emissions compared to other sources, and the adoption of Part 39 and amendments to Part 41 will allow the Department to redirect its resources to focus on large contributors to air pollution.

**{10}** In support of her argument, Appellant points to testimony from Department witnesses regarding the Department's limited discretion to apply air quality regulations regarding the construction and operation of gas stations and emergency generator emissions, the small number of gas station and emergency generator air quality complaints and cases that were appealed to this Court, and the lack of need of active oversight of gas stations in light of EPA regulations. Presumably, Appellant points to these factors to show that certain aspects of the Department's work are not overly time-consuming. Appellant, however, fails to explain how these facts show the Department's current permitting process for gas stations and emergency generators is more efficient than that set out in Part 39. Viewing the record as a whole, we conclude that the Board's decision that the Department's request to adopt Part 39 and amend Part 41 "is in the public interest because it achieves air quality protections by a more efficient method that allows [the Department] to allocate its resources more wisely[,]" was not arbitrary or capricious, nor was it an abuse of discretion.

**B. The Evidence Was Sufficient to Support the Board's Findings That Gas Stations and Emergency Generators Are Not a Major Source of Benzene Exposure and Are Not a Threat to Public Health**

**{11}** Appellant next contends that the testimony presented by the Department related to the dangers of benzene was not supported by sufficient data to allow the Board to properly "quantify adverse health effects due to long-term exposure to toxins such as benzene immediately adjacent to [g]as [s]tations." Specifically, Appellant claims the testimony of the Department's expert, Dr. Kathryn Kelly, an environmental toxicologist, was deficient. According to Appellant, the Department's expert failed to provide data related to the concentration and length of exposure and proximity to the source to support her conclusions.

**{12}** Dr. Kelly testified about the health effects of gas stations in Albuquerque-Bernalillo County. During the course of her testimony, Dr. Kelly opined: (1) Albuquerque and Bernalillo County gas stations are not a major source of benzene exposure; (2) "Exposure to benzene from gas stations is not high enough to cause adverse health effects and a risk to public health in Albuquerque and Bernalillo County," and "[g]as stations do not create 'serious air pollution' or 'significant degradation of air quality' that 'severely compromises public health' "; and (3) "There is no scientific basis for considering gas stations a threat to public health in Albuquerque-Bernalillo County, now or in the foreseeable future." In support of her conclusions, Dr. Kelly testified that gas stations located in Albuquerque-Bernalillo County "are not a major source of exposure to air toxi[n]s." Gas stations, she explained, "are a relatively small contributor to overall benzene exposure, accounting for . . . 1.31% of the total benzene in Albuquerque-Bernalillo County air," and living near a gas station does not increase one's "exposure to levels above EPA thresholds of concern[.]" Dr. Kelly pointed to a City of Albuquerque report that measured concentrations of toxic air pollutants in Albuquerque at three monitoring stations, including one at Del Norte High School, described as "near one of the busiest intersections in the state and not far from a gas station." The concentrations of benzene measured in Albuquerque-Bernalillo County were "very small compared to

EPA's thresholds of concern"—"hundreds of times lower than EPA thresholds." (Emphasis omitted.) At the hearing on the Department's petition, Appellant asked Dr. Kelly about the effects of being in close proximity to a "hotspot like a gas station for long periods of time." Dr. Kelly testified that the EPA had studied the issue and concluded that while benzene is a carcinogen at high levels of exposure, "it's not at the levels at which [we] are exposed at gas stations[,]" explaining:

> [I]f there is going to be exposure, it's going to be primarily to the workers who are working at the gas station; and then, secondarily, to you and me. And they said we go there an average of 70 minutes a year to pump our gas; and that the exposure from the gas station to a nearby residence drops off very dramatically because it's a volatile chemical. It goes up; it doesn't go sideways to go in your window and mine.

The Board adopted all three of Dr. Kelly's findings.

**{13}**    Initially, we disagree with Appellant's claim that Dr. Kelly's opinions did not address the concentration of, length of exposure to, and proximity to benzene emitted from gas stations. When questioned by Appellant about these specific metrics, Dr. Kelly explained that EPA studies showed that exposure to benzene from gas stations was well below levels the EPA deemed carcinogenic (addressing concentration), that most people spent only a few minutes a year exposed to benzene while pumping gas (length of exposure), and that exposure to those living nearby drops off dramatically because it travels vertically, rather than horizontally (proximity). Appellant did not follow up with any specific questions about concentrations of, length of exposure to, or proximity to benzene. More importantly, Appellant did not present any expert testimony of her own to establish that Dr. Kelly's conclusions were lacking and therefore unreliable. Absent such testimony, we cannot conclude that the Board acted arbitrarily or capriciously, or that it abused its discretion when it found gas stations and emergency generators are not a major source of benzene exposure and are not a threat to public health.

## II.    The Board's Decision Was Not Contrary to Law

**{14}**    Having concluded that the Board's decision was not arbitrary and capricious or an abuse of discretion, we now turn to Appellant's arguments that the Board's decision was not in accordance with the law. Appellant argues that the Board's decision was contrary to law because (1) AQNs are effectively permits that are subject to the same public notice requirements as permits under the Air Quality Control Act; (2) the Board did not consider environmental justice principles, as required by 20.11.82.32(A)(2) NMAC; and (3) the Board abandoned its legislative mandate to reduce or abate air pollution and exceeded its authority by exempting an entire source category from permits by implementing Part 39.

**{15}**    "The term 'not in accordance with law' involves action taken by an agency or court which is based on an error of law, is arbitrary and unreasonable, or is based on conjecture, and is inconsistent with established facts." *Perkins v. Dep't of Human*

*Servs.*, 1987-NMCA-148, ¶ 22, 106 N.M. 651, 748 P.2d 24. "Whether the [administrative b]oard's actions were contrary to law is a question reviewed de novo." *Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 5, 140 N.M. 198, 141 P.3d 542.

## A.    Appellant Has Failed to Show AQNs Are Permits

**{16}**    First, Appellant argues that the AQNs created under Part 39 are permits "in everything but name" because "[n]o existing or future [g]as [s]tations or [e]mergency . . . [g]enerators will be allowed to operate without an AQN." Appellant, however, fails to cite any authority to support her contention that the mere fact that an operator must obtain an AQN to commence or continue the operation of a gas station or emergency generator renders an AQN a permit subject to the requirements of a permitting action set out in NMSA 1978, Section 74-2-7 (2003). *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (holding that where a party cites no authority to support an argument, we may assume no such authority exists). Further, Appellant fails to explain why the Board was not authorized to pass Part 39, under the provisions of the Act and the associated regulations allowing it to "adopt, promulgate, publish, amend and repeal rules and standards consistent with the Air Quality Control Act to attain and maintain national ambient air quality standards and prevent or abate air pollution[.]" NMSA 1978, § 74-2-5(B)(1) (2007, amended 2019); *see also* 20.11.39.12 NMAC. As Appellant has failed to show how the Board's action in replacing the permit requirement with the AQN requirement is contrary to law, we find no error on the part of the Board on these grounds. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 17, 125 N.M. 401, 962 P.2d 1236 ("The party challenging an agency decision bears the burden on appeal of showing that agency action falls within one of the oft-mentioned grounds for reversal." (internal quotation marks and citation omitted)); *Embudo Canyon Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-171, ¶ 8, 126 N.M. 327, 968 P.2d 1190 ("Decisions of a municipality are presumably valid and the burden of proving otherwise rests upon a party seeking to void such decision."), *superceded by statute on other grounds as stated by C.F. T. Dev., LLC v. Bd. of Cty. Comm'rs of Torrance Cty.*, 2001- NMCA-069, ¶ 14, 130 N.M. 775, 32 P.3d 784.

## B.    Appellant Did Not Preserve Her Argument That the Board Failed to Properly Consider Principles of Environmental Justice

**{17}**    Next, Appellant argues that "[a]llowing the [Department] to issue waivers for hazardous activities without any prior notification and without the possibility of hearing or appeals, does not support environmental justice." Appellant, however, failed to preserve her argument before the Board. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). While mentioning in her opening statement to the Board that "the idea of environmental justice . . . needs to apply[,]" Appellant did not otherwise mention environmental justice or ask the Board to consider whether the issuance of AQNs without prior notification and without the possibility of a hearing or appeal is contrary to environmental justice. Absent an argument that alerted the Board to her specific

contention that the lack of these or other procedural mechanisms were contrary to environmental justice, Appellant did not properly (1) "alert the [Board] to a claim of error so that any mistake can be corrected at that time, (2) . . . allow the opposing party a fair opportunity to respond to the claim of error and to show why the [Board] should rule against that claim, and (3) . . . create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Gonzales v. Shaw*, 2018-NMCA-059, ¶ 14, 428 P.3d 280 (internal quotation marks and citation omitted). We therefore will not review the issue. *See State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**C.      Appellant Failed to Show the Adoption of Part 39 and Amendment to Part 41 Is Contrary to the Board's Legislative Mandate to Reduce or Abate Air Pollution**

**{18}**    Last, Appellant argues that by implementing Part 39, the Board abandoned its legislative mandate to reduce or abate air pollution and exceeded its authority by exempting an entire source category from permits. Appellant argues that the Board is charged by state law to prevent or abate air pollution and its passage of Part 39 abandoned that legislative mandate. Indeed, Section 74-2-5(A) does require that "local board[s] shall prevent or abate air pollution." However, Appellant fails to explain or provide any legal authority supporting the proposition that the implementation of Part 39, promulgated in accordance with the Board's authority under Section 74-2-5(B) constitutes an abandonment of the Board's legislative mandate. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 ( holding that where a party cites no authority to support an argument, we may assume no such authority exists). Indeed, the expert testimony from the Department suggests the opposite—that the adoption of Part 39 allows the Department to more effectively address air pollution in furtherance of its legislative mandate. The Board made numerous findings of fact that the implementation of Part 39 would allow the Department to allocate more resources to address higher sources of emissions without compromising air quality standards. We cannot conclude that the Board's decision was contrary to law.

**{19}**    Appellant also argues that the Board exceeded its authority by passing Part 39 because the Board does not have the power to exempt entire source categories from the permit requirement. Appellant failed to preserve this argument below, and we will not address it. *See Leon*, 2013-NMCA-011, ¶ 33; *Gonzales*, 2018-NMCA-059, ¶ 14.

**{20}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**