IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-053

Filing Date: June 26, 2019

No. A-1-CA-36688

THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK, as
Trustee for the CERTIFICATEHOLDERS
OF THE CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2007-9,

      Plaintiff-Appellee,

v.

**PHUONG T. LUU,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Released for Publication September 24, 2019.

Rose L. Brand & Associates, P.C.
Eraina M. Edwards
Albuquerque, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV
Albuquerque, NM

for Appellant

OPINION

**M. ZAMORA, Chief Judge.**

**{1}** Defendant Phuong T. Luu appeals from the district court's judgment on the merits and order for foreclosure sale in favor of Plaintiff The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate holders of the CWABS, Inc.,

Asset-Backed Certificates, Series 2007-9. On appeal, Defendant challenges the district court's conclusion that Plaintiff had standing to enforce the promissory note. Specifically, Defendant questions the validity of the note's indorsement, claiming it is fraudulent and therefore ineffective to show that Plaintiff holds the note, and alleges that the district court's determination to the contrary was unsupported by any evidence. Concluding the district court's ruling is supported by substantial evidence, we affirm.

**BACKGROUND**

**{2}**   On May 3, 2007, Defendant executed a promissory note in the principal sum of $160,800, payable to Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender (Countrywide). Around the same time, and as security for repayment of the debt evidenced by the note, Defendant executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide.

**{3}**   Plaintiff is trustee for a trust created on May 1, 2007. According to the evidence introduced at trial, on May 8, 2007, Defendant's loan was transferred from Countrywide to the Plaintiff trust, which had a cut-off date for receiving loans of June 8, 2007. Defendant's loan was initially serviced by Bank of America until Specialized Loan Servicing (SLS) took over servicing the loan. SLS records show the original note was delivered to Bank of America on May 8, 2007, and thereafter transferred to counsel for Plaintiff on July 10, 2012.

**{4}**   Defendant became delinquent on payments due under the note, and on October 4, 2012, Plaintiff filed its initial complaint for foreclosure against Defendant.[1] Plaintiff attached a copy of the note as an exhibit to that complaint, which was unindorsed and contained a stamp from LandAmerica Albuquerque Title Company certifying the note as a true and correct copy of the original. On October 22, 2014, that complaint was voluntarily dismissed without prejudice. No rulings regarding standing were made prior to dismissal.

**{5}**   On April 21, 2015, Plaintiff filed a second complaint for foreclosure against Defendant, initiating the case that forms the basis for this appeal. In its complaint, Plaintiff alleged it is the holder of the note and the mortgage and is therefore entitled to enforce the note. Plaintiff further alleged that it was in possession of the original note at the time of filing, and attached a copy of the note to the complaint, as well as an affidavit from Plaintiff's counsel attesting to possession of the original note. The note attached to the complaint contains a blank indorsement signed by Michele Sjolander, Executive Vice President of Countrywide. The indorsement is undated, and the parties and the district court agree that the indorsement was signed by stamp, rather than by hand. The note attached to the present complaint does not contain the title company's stamp, as the 2012 copy did.

---

[1] At trial, the district court took judicial notice of the entire case file from the previous district court case, *Bank of N.Y. Mellon v. Luu*, No. D-202-CV-2012-09169.

**{6}** Defendant filed a motion to dismiss the complaint, arguing Plaintiff lacked standing because the note's indorsement is invalid. In her motion, Defendant claimed it was "suspicious" that the note attached to Plaintiff's prior complaint in 2012 was unindorsed, yet the note attached to the present complaint contains an indorsement, and therefore contended that the indorsement in the present case must be a result of fraud. The district court denied Defendant's motion. Following discovery, Plaintiff moved for summary judgment, which the district court also denied, ruling there was a genuine issue of material fact as to whether Plaintiff had standing because of the dispute over the timing and effectiveness of the note's indorsement.

**{7}** The matter proceeded to a bench trial, wherein the original note containing the indorsement was presented and admitted as an exhibit, as were other documents concerning Defendant's loan. Based on the evidence admitted at trial, which is discussed in more detail below, the district court concluded that Plaintiff had standing to enforce the note and mortgage lien. Rejecting Defendant's argument that the indorsement was fraudulent, the district court determined the indorsement was properly made. Following a bench trial, the district court concluded that Plaintiff had standing and was thus entitled to enforce the note and foreclose the mortgage. The district court issued an order ruling in favor of Plaintiff and ordering a foreclosure sale.

## DISCUSSION

**{8}** Defendant argues the district court erred in finding that the note was indorsed by Ms. Sjolander of Countrywide prior to April 1, 2009, and in ruling that Plaintiff has standing to bring the action as the real party in interest. Defendant similarly argues that the district court erred in ruling that the original note is indorsed in blank and has been transferred by possession alone. In short, these arguments challenge whether the indorsement was effective to show Plaintiff was the holder of the note at the time the complaint was filed and, thus, whether Plaintiff has standing to enforce the note. We first review whether Plaintiff made a prima facie case of standing and then review Defendant's challenge to the legitimacy of the indorsement.

### Standard of Review

**{9}** In this case, we review the district court's conclusion that Plaintiff had standing under a substantial evidence standard of review. *See Deutsche Bank Nat'l Tr. Co. v. Johnston,* 2016-NMSC-013, ¶ 28, 369 P.3d 1046; *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 18, 320 P.3d 1 ("Because the district court determined after a trial on the issue that the Bank of New York established standing as a factual matter, we review the district court's determination under a substantial evidence standard of review."). " 'Substantial evidence' means relevant evidence that a reasonable mind could accept as adequate to support a conclusion." *Johnston*, 2016-NMSC-013, ¶ 28 (quoting *Romero*, 2014-NMSC-007, ¶ 18). In conducting our review, we "resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings." *Id.* (internal quotation marks and citation omitted).

## I. Plaintiff Made a Prima Facie Showing of Standing

**{10}** A plaintiff seeking to foreclose a mortgage must show standing at the time of filing by demonstrating that it has the right to enforce the mortgage lien and the underlying promissory note. *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 8, 336 P.3d 443. To establish the right to enforce the note, New Mexico's Uniform Commercial Code (UCC) requires a plaintiff to prove it is either: "(i) the holder of the instrument[;] (ii) a nonholder in possession of the instrument who has the rights of a holder[;] or (iii) a person not in possession of the instrument who is entitled to enforce the instrument[.]" NMSA 1978, § 55-3-301 (1992). A plaintiff may show it is the holder of a note and satisfy the requirements of standing by attaching a note indorsed in blank to its complaint. *Johnston*, 2016-NMSC-013, ¶ 23; *BAC Home Loans Servicing, LP v. Smith*, 2016-NMCA-025, ¶ 11, 366 P.3d 714 ("[U]nder the UCC, possession of a note indorsed in blank ordinarily establishes the right of a third party as the holder of that note.").

**{11}** Plaintiff demonstrated that it was the holder of the note at the time the present complaint was filed. *See* NMSA 1978, § 55-1-201(b)(21)(A) (2005) (defining holder of the note as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). The complaint alleged the note was indorsed in blank and transferred to Plaintiff. A copy of the indorsed note was included as an exhibit to the complaint. In addition, Plaintiff concurrently filed an affidavit of Plaintiff's counsel attesting to possession of the original note. These facts demonstrate possession of the note indorsed in blank at the time the complaint was filed, and thus Plaintiff made a prima facie showing of standing in accordance with our case law. *See Johnston*, 2016-NMSC-013, ¶ 25 (recognizing that where a party presents a note indorsed in blank with the initial complaint, it is "entitled to a presumption that it could enforce the note at the time of filing and thereby establish standing"). Accordingly, Plaintiff is entitled to a presumption that it has the right to enforce the note. *See id.* Although we conclude Plaintiff made a prima facie showing of standing, this does not dispose of the matter because Defendant takes issue with the validity of the note's indorsement. We must therefore determine whether substantial evidence supports the district court's conclusion as to the legitimacy of the indorsement. *See id.* ¶¶ 28-32 (reviewing the district court's conclusions for substantial evidence).

## II. Substantial Evidence Exists to Support the District Court's Conclusion That the Note Was Properly Indorsed

**{12}** Defendant challenges the legitimacy of the indorsement on the note. Specifically, Defendant argues on appeal that Plaintiff lacks standing to enforce the note because the indorsement on the note is invalid. Defendant bases her argument on the fact that Plaintiff filed a foreclosure complaint against Defendant in 2012 and attached thereto a certified copy of the note that did not contain any indorsements. When Plaintiff filed the present complaint in 2015, it attached a copy of the original note containing a blank indorsement signed by the Countrywide representative Ms. Sjolander. According to Defendant, the copy of the unindorsed note attached to the 2012 complaint was allegedly a copy of the original note as it existed in 2012, and Defendant suggests that

the indorsement on the note attached to the present complaint was made after the fact, and therefore must be fraudulent. Moreover, because Countrywide ceased existing after April 1, 2009, Defendant contends Countrywide's indorsement is only effective if it was made prior to that date.

**{13}**    To address whether the note was properly indorsed, the district court was required to resolve a conflict in the evidence. In the district court, two versions of the note were admitted into evidence—one containing the indorsement and one with no indorsement. By "reconcil[ing] inconsistencies[] and determin[ing] where the truth lies," the district court found that, after the note's execution but sometime before April 1, 2009, the note was indorsed in blank by Ms. Sjolander of Countrywide. *N.M. Taxation & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 23, 336 P.3d 436 (alteration, internal quotation marks, and citation omitted). The district court also found that the copy of the note attached to the 2012 complaint was a copy that the title company made at loan closing in 2007. In concluding the note was properly indorsed, the district court rejected Defendant's theory that the indorsement was fraudulent. The district court was entitled to resolve the apparent evidentiary conflict created by the existence of the contrary notes. *Hess Corp. v. N.M. Taxation & Revenue Dep't*, 2011-NMCA-043, ¶ 37, 149 N.M. 527, 252 P.3d 751 ("Resolution of factual conflicts, credibility, and weight is the task of the [district] court." (internal quotation marks and citation omitted)). We will not reweigh the evidence on appeal. *See Clark v. Clark*, 2014-NMCA-030, ¶ 26, 320 P.3d 991 ("We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." (alteration, internal quotation marks, and citation omitted)). Rather, "[w]e simply review the evidence to determine whether there is evidence that a reasonable mind would find adequate to support a conclusion." *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 15, 150 N.M. 17, 256 P.3d 29 (alteration, internal quotation marks, and citation omitted). On appeal, we must indulge all reasonable inferences in favor of the district court's ruling. *Johnston*, 2016-NMSC-013, ¶ 28.

**{14}**    The district court's determination that the note was properly indorsed is supported by substantial evidence. At trial, Nicholas Raab, Assistant Vice President of the High Risk Department at SLS, testified for Plaintiff. At the time of trial, SLS serviced Defendant's loan for Plaintiff. Mr. Raab had been employed by SLS for over ten years. Mr. Raab testified as to his familiarity with SLS practices and business records, as well as his experience working with loans originated by Countrywide. Based on his knowledge and experience, Mr. Raab explained that a title company typically stamps a copy of the note when the loan closes. Mr. Raab explained that a title company would only be involved with the note at loan closing and that the copy of the note attached to the 2012 complaint was the title company's certified copy of the note made at loan closing. Defendant's loan closed on May 3, 2007. Mr. Raab also explained that Countrywide indorses notes at the time such notes are transferred to the next owner. Defendant's loan was transferred to the trust by a Pooling and Servicing Agreement wherein Countrywide conveyed all of its interest in Defendant's mortgage loan to Plaintiff. The transfer of Defendant's loan took place on May 8, 2007—a few days after the loan closed.

**{15}**     Initially, we address Defendant's concern that Mr. Raab was an unqualified witness. Although Defendant does not specifically challenge on appeal the admission of that evidence, she fleetingly asserts in her reply brief that Mr. Raab's testimony should be deemed inadmissible because it was not based on personal knowledge. We will not consider the admissibility of Mr. Raab's testimony because the issue was raised for the first time in Defendant's reply brief. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 ("[T]he general rule is that we do not address issues raised for the first time in a reply brief[.]"); *cf.* Rule 12-318(C) NMRA (stating in pertinent part that a reply brief "shall reply only to arguments or authorities presented in the answer brief"). Nonetheless, we note that Mr. Raab's testimony was grounded in his personal knowledge and experience working at SLS. Based on his knowledge, Mr. Raab testified as to practices and procedures and explained SLS business records in detail.

**{16}**     We thus turn to the district court's determination that the certified copy of the note attached to the 2012 complaint was a copy from the title company made at loan origination, and not a copy of the original note as it existed in 2012. Defendant's theory of fraud relies in part on the assumption that the note attached to the 2012 complaint represented the original note as it existed in 2012. However, our review of the evidence, including Mr. Raab's testimony that the title company was only involved at loan closing, does not support Defendant's position. The evidence shows that Defendant's loan closed on May 3, 2007, and that at closing the title company made a copy of the note and stamped the copy to designate it as a certified copy of the original. Further, the evidence supports a conclusion that the title company did not place a stamp on the original note as no such stamp appears on the original note that was introduced at trial, and that the title company would not have made a copy of the note or otherwise have been involved with the note other than at closing. Therefore, the fact that the copy of the note attached to the complaint in 2012 states it is a certified copy does not mean the copy was a copy of the note as it existed in 2012; but only that it was a copy of the original as it existed at loan origination in 2007. Substantial evidence supports the conclusion that the note attached to the 2012 complaint was not a copy of the original note as it existed in 2012.

**{17}**     To the extent Defendant implies that the best evidence rule indicates that we must take the unindorsed note attached to the 2012 complaint as the true copy of the original, we disagree. The accuracy of the copy of the indorsed original note attached to the present complaint was confirmed when the district court made a copy of the actual original note and admitted it into evidence. The requirements of Rule 11-1002 NMRA are thus met because the original note was inspected by the district court, copied, and admitted as an exhibit during trial. Defendant's contention that the provisions of Rule 11-902 NMRA regarding public records affects the authentication of the original note is likewise misplaced because the original note is not a copy of a public record.

**{18}**     Having concluded that substantial evidence supports the district court's conclusion that the note attached to the 2012 complaint was not a copy of the original note as it existed in 2012, we next turn to the court's determination that the note was

indorsed prior to April 1, 2009, when Countrywide ceased doing business. Mr. Raab testified that Countrywide indorsed notes at the time of transfer to a subsequent owner. The evidence shows that Defendant's loan was transferred to the trust on May 8, 2007, and that the cut-off date for loans to be transferred to the trust was June 8, 2007. Based on Countrywide's practice of indorsing notes at the time of transfer to a subsequent owner, and the fact that Defendant's loan was transferred to the trust in 2007, it was reasonable for the district court to conclude that the indorsement was made prior to April 1, 2009. Defendant did not present any evidence at trial to refute the foregoing timeline of events, but rather argued that the evidence supported her theory of fraud. We note that the arguments of counsel are not evidence, *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104, and the district court, as the fact-finder, was free to reject Defendant's version of the facts. *See Casias Trucking*, 2014-NMCA-099, ¶ 23 ("It is the sole responsibility of the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistencies, and determine where the truth lies[.]" (internal quotation marks and citation omitted)). On appeal, we will not speculate as to other possible outcomes. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached.").

**{19}** In her briefing, Defendant repeatedly emphasizes the lack of evidence conclusively proving the date on which the indorsement was made, noting that Mr. Raab could not point to a specific piece of evidence showing the indorsement was made prior to April 1, 2009. But this does not foreclose the district court's conclusion that the evidence, *as a whole*, supports that the indorsement was made at some point prior to April 1, 2009. In evaluating the evidence, we accept inferences made by the district court based on the evidence, so long as they are reasonable. *See Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 17, 140 N.M. 198, 141 P.3d 542 ("We accept the reasonable inferences made by the fact-finder.").

> In a civil case, circumstantial evidence is competent to prove a fact in issue and it is unnecessary that such proof rise to the degree of certainty to support only one conclusion to the exclusion of all others. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the facts sought to be proved.

*Alfieri v. Alfieri*, 1987-NMCA-003, ¶ 30, 105 N.M. 373, 733 P.2d 4 (citation omitted). Although the district court based its conclusions regarding the timing of the indorsement on circumstantial evidence, the evidence is, nonetheless, sufficient. *See Consol. Elec. Distribs., Inc. v. Santa Fe Hotel Grp., LLC*, 2006-NMCA-005, ¶¶ 13-14, 138 N.M. 781, 126 P.3d 1145 ("[S]ubstantial evidence may be comprised of either direct or circumstantial evidence."). We conclude substantial evidence exists to support the district court's ruling that the original note was indorsed at some point subsequent to execution and prior to April 1, 2009.

### III.    Defendant Failed to Overcome a Legal Presumption That the Indorsement Is Valid

**{20}**    We therefore turn to Defendant's argument that Ms. Sjolander's signature was fraudulently applied or that there was falsification of her indorsement based on a "robo-signing" theory. Our analysis focuses on the legal presumption addressing the validity and authenticity of signatures, which we conclude Defendant failed to overcome.

**{21}**    Under the UCC, "[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." NMSA 1978, § 55-3-308(a) (1992). If the validity of a signature is denied in the pleadings, the party claiming under the signature bears the ultimate burden of proving its validity. *See id.* However, the signature is still entitled to a presumption of validity. *See id.* Such presumption remains intact unless evidence supporting the signature's invalidity is introduced. *See id.* cmt. 1 (explaining that "presumed" "means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid"); NMSA 1978, § 55-1-206 (2005) ("Whenever the [UCC] creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed', the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.").

**{22}**    Defendant claims because she questioned the validity of the indorsement in the pleadings, Plaintiff bears the burden of proving the indorsement's authenticity. Defendant's interpretation of Section 55-3-308 is flawed. Although Defendant is correct that Plaintiff bears the ultimate burden of establishing the indorsement's validity, when Plaintiff's evidence gives rise to the presumption of validity, the obligation to further prove validity only arises when that presumption is overcome by Defendant's evidence. *See* § 55-3-308 cmt. 1. Pursuant to the UCC, Ms. Sjolander's signature in the indorsement on the note is presumed valid until and unless Defendant introduces evidence that would support a finding that the signature is forged or unauthorized. *See id.* In the absence of such evidence, Plaintiff's burden of proof is not triggered; rather, the signature is presumed authentic as a matter of law. *See id.*

**{23}**    Defendant did not introduce any evidence in the district court to support a finding that the note's indorsement was either forged or unauthorized, and, instead only presented her own speculation and inferences. In support of her theory of fraud, Defendant relied on the unindorsed copy of the note attached to Plaintiff's prior complaint and evidence as to the date Countrywide ceased doing business. Defendant contends because the note attached to the prior complaint was unindorsed, the indorsement on the note attached to the present complaint *must* be fraudulent since the evidence does not show the indorsement was made prior to April 1, 2009. Defendant's argument relies on the assumption that if Plaintiff was in possession of the indorsed note in 2012, it would have attached the indorsed note to its complaint rather than attach an unindorsed copy. However, as we discussed above, Defendant provided no actual evidence to support her contention that the unindorsed note was a copy of the

original note as it existed in 2012 rather than merely a copy of the note made at some point prior to indorsement.

**{24}**     Indeed, the existence of both an indorsed note and a prior copy of the note made before indorsement is not unusual, and we hold that it is insufficient on its own to support a finding of fraud. Numerous courts applying identical signature presumptions have reached the same conclusion. *See, e.g.*, *In re Phillips*, 491 B.R. 255, 273 (Bankr. D. Nev. 2013) (explaining that the subsequent appearance of an indorsed note that had not initially been filed did not constitute a threshold showing of fraud or forgery); *In re Hunter*, 466 B.R. 439, 449-50 (Bankr. E.D. Tenn. 2012) (concluding the presence of two notes, one indorsed and one with no indorsements, was inadequate to overcome the presumption of indorsement's validity); *In re Wilson*, 442 B.R. 10, 15 n.6 (Bankr. D. Mass. 2010) ("The mere existence of one or more copies of the note that were made from the original before it was indorsed does not create a genuine issue as the timing of the indorsement without further evidence as to when the copies were made from the original.").

**{25}**     Defendant additionally argues that falsification of signatures on notes is widespread and points to cases from other jurisdictions where fraud was alleged in connection with stamped indorsements containing Ms. Sjolander's signature. However, much of what Defendant cites to are merely allegations and not factual findings, and, in any event, we are unconvinced that allegations or even factual findings made in unrelated actions constitute sufficient evidence to support a finding of forgery in this case. *See Muse*, 2009-NMCA-003, ¶ 51 ("The mere assertions and arguments of counsel are not evidence."); *cf. State v. Kerby*, 2005-NMCA-106, ¶¶ 23-25, 138 N.M. 232, 118 P.3d 740 (stating that propensity to act in a certain way or the fact that a defendant has acted in a certain way in the past does not and may not serve as evidence that the defendant has acted in that way in the present case). **{26}** Further, although Defendant implies that the fact that Ms. Sjolander's signature was mechanically applied may reinforce her allegations regarding fraud, she fails to present any evidence or authority that requires such a conclusion, and we are aware of no New Mexico case stating that a mechanically-applied signature is a falsified or fraudulent signature. *See, e.g.*, *Lopes*, 2014-NMCA-097, ¶ 3 (taking no issue with an indorsement that "appear[ed] to be signed by stamp rather than by hand"); *see Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We decline to arrive at such a conclusion now, noting that there is no requirement in the UCC that an indorsement be made by a wet-ink signature rather than a stamp. *See* NMSA 1978, § 55-3-204(a) (1992) (defining "indorsement" as a signature "made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument"); § 55-1-201(b)(37) (defining "signed" as "any symbol executed or adopted with present intention to adopt or accept a writing").

**{27}**     To overcome the presumption of the indorsement's validity, Defendant was "required to make some sufficient showing" of evidence in support of her claim that the

indorsement was invalid. Section 55-3-308 cmt. 1. Based on the foregoing discussion, we conclude Defendant failed to make an adequate showing. The evidence offered by Defendant does not indicate that Ms. Sjolander's signature was invalid, fraudulent, or falsified, and the indorsement was thus entitled to a presumption of validity. *See* § 55-3-308(a). Accordingly, we conclude that the district court did not err in rejecting Defendant's theory of fraud.

**IV.    The District Court Did Not Err in Concluding That the Note Was Indorsed in Blank and Transferred by Possession**

**{28}**    Finally, we turn to Defendant's argument that the district court erred in ruling that the original note was indorsed in blank and was transferred by possession alone. Because Plaintiff established a prima facie case that it had standing based on possession of the original note indorsed in blank, and given that Defendant's argument calling into question the validity of the indorsement has been rejected, we conclude the district court did not err in ruling that the original note is indorsed in blank and has been transferred by possession alone. *See* NMSA 1978, § 55-3-205(b) (1992) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

**CONCLUSION**

**{29}**    Based on the foregoing, we affirm the district court's judgment.

**{30}    IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**