This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42387**

**IN RE: STATE LAND OFFICE**
**OIL AND GAS LEASE NO. L00423,**
**ASSIGNMENT NO. 0001,**

and

**IN RE: EDDY GK STATE COMM WELL**
**#2 COMMUNITIZATION AGREEMENT,**

**SNOW OIL AND GAS, INC.,**

      Appellant-Respondent/Appellee,

v.

**STEPHANIE GARCIA RICHARD,**
**Commissioner of Public Lands**
**of the State of New Mexico,**

      Appellee-Petitioner/Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Court Judge**

Shaheen Law NM LLC
Sharon T. Shaheen
Santa Fe, NM

Spencer Fane LLP
Angela E. Harris
Santa Fe, NM

for Appellee

New Mexico State Land Office
John L. Sullivan, Senior Counsel

Ari Biernoff, General Counsel
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** This case arises out of an administrative contest decision where the Commissioner of Public Lands, Stephanie Garcia Richard (Commissioner), determined that a state oil and gas lease (Lease) owned by Snow Oil & Gas, Inc. (Snow) had expired. Following Snow's appeal of that decision to district court, the Commissioner now appeals the district court's order remanding the matter for reinstatement of Snow's Lease. On appeal, the Commissioner argues: (1) the decision that the Lease expired was supported by substantial evidence and was made according to established law; (2) the Commissioner was not required to accept late or alleged overpayments to reinstate the Lease; and (3) Snow had no property interest in the expired Lease from which to assert a due process or takings claim. We agree. Accordingly, we reverse and remand to the district court for entry of an order affirming the Commissioner's final order.

**BACKGROUND**

**Relevant Lease Provisions**

**{2}** An explanation of relevant provisions from Snow's Lease No. L-423-1[1] is necessary to understand this appeal.[2] The Lease was issued in 1967 and assigned to Snow in March 1991. Like most oil and gas leases, it contains a habendum clause and a savings clause. A habendum clause establishes that a lease will continue after its primary term so long as oil or gas is produced in paying quantities. *See Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 9, 134 N.M. 308, 76 P.3d 626. A savings clause, often called the shut-in royalty clause, however, allows a lessee to avoid automatic termination in the case of temporary nonproduction if a well is still capable of producing gas in paying quantities and the lessee makes annual shut-in payments to substitute for royalty payments. *See id.* ¶¶ 10-11.

**{3}** In this case, the habendum clause sets out that Snow's Lease is "[f]or a primary term of five years from the date hereof, and as long thereafter as oil and gas in paying

---

[1] The original Lease was numbered L-423 and upon assignment it was renumbered to L-423-1. Documents in the record also refer to the Lease as L0-0423-0001.

[2] Snow's Lease is a state oil and gas lease originally made in accordance with the statutory lease form prescribed by Chapter 189, Section 1 of New Mexico Laws of 1967. In 1978, a previous lessee and the then-commissioner stipulated to amending the Lease to adopt the revised statutory form in accordance with Chapter 70, Section 1 of New Mexico Laws of 1972. The current statutory lease form is found at NMSA 1978, Section 19-10-4.1 (1985). These terms do not differ from the relevant provisions in the original Lease.

quantities, or either of them, is produced." The savings, or shut-in, clause further establishes:

> This [L]ease shall not expire at the end of either the primary or secondary term hereof if there is a well capable of producing gas in paying quantities located upon some part of the lands embraced herein where such well is shut-in due to the inability of the lessee to obtain a pipeline connection or to market the gas therefrom; provided, however, the owner of this [L]ease as to the lands upon which such well is located shall pay an annual royalty equal to the annual rental payable by such owner under the terms of this [L]ease but not less than one hundred dollars ($100) per well per year, said royalty to be paid on or before the annual rental paying date next ensuing after the expiration of ninety days from the date said well was shut-in and on or before said rental date thereafter. The payment of said annual royalty shall be considered for all purposes the same as if gas were being produced in paying quantities and upon the commencement of marketing of gas from said well or wells the royalty paid for the lease year in which the gas is first marketed shall be credited upon the royalty payable hereunder to the lessor for such year. The provisions of this section shall also apply where gas is being marketed from said leasehold premises and through no fault of the lessee, the pipeline connection or market is lost or ceases, in which case this [L]ease shall not expire so long as said annual royalty is paid as herein provided. Notwithstanding the provisions of this section to the contrary, this [L]ease shall not be continued after ten years from the date hereof for any period of more than five years by the payment of said annual royalty.

The parties agree that shut-in payments are due annually on the 21st day of November the day the Lease became effective.

**{4}** Separate from the habendum clause, the Lease also contains a cancellation clause setting out the following:

> Upon failure or default of the lessee or any assignee to comply with any of the provisions or covenants hereof, the lessor is hereby authorized to cancel this lease and such cancellation shall extend to and include all rights hereunder as to the whole of the tract so claimed, or possessed by the lessee or assignee so defaulting . . . provided, however that before any such cancellation shall be made, the lessor shall mail to the lessee, or assignee so defaulting, by registered or certified mail, addressed to the post-office address of such lessee or assignee as shown by the records of the state land office, a notice of intention of cancellation specifying the default for which cancellation is to be made, and if within thirty days from the date of mailing said notice the said lessee or assignee shall remedy the default specified in said notice, cancellation shall not be made.

This provision reflects the cancellation requirements set forth in NMSA 1978, Section 19-10-20 (1945), requiring notice and opportunity to cure before a state oil and gas lease is cancelled for nonpayment of rentals or nonperformance.

**{5}** In addition to the Lease, Snow's two wells, Eddy GK State Com Well 1 (Eddy GK 1) and Eddy GK State Com Well 2 (Eddy GK 2), are subject to communitization agreements with connected lands Snow leased from the federal government. Communitization agreements pool together lands leased under multiple leases so that production of oil and gas in paying quantities from any part of the pooled area is considered production from each tract included in the agreement. *See* NMSA 1978, § 19-10-53 (1955); *Kysar v. Amoco Prod. Co.*, 2004-NMSC-025, ¶¶ 21-23, 135 N.M. 767, 93 P.3d 1272 (explaining the purpose and effect of communitization agreements). The agreement for Eddy GK 1 was entered into in 1977 for a primary term of one year and "so long thereafter as communitized substances are, or, as to lands not owned by the State of New Mexico, can be produced in paying quantities from the communitized formation." The agreement for Eddy GK 2 was entered into in 1984 for a primary term of two years and "for so long as communitized substance are, or can be, produced from the communitized area in paying quantities." Both agreements include a savings clause providing that "[t]his agreement shall not terminate upon cessation of production" if, within sixty days after cessation of production, reworking or redrilling operations begin and proceed with reasonable diligence during the period of nonproduction.

## Factual and Procedural Background

**{6}** It is in the context of these Lease provisions that the facts of this case arise. The parties do not dispute the facts as set out here, and additional facts are developed as needed in the discussion below.

**{7}** In 2015, Snow shut-in Eddy GK 1 and Eddy GK 2 because of high pipeline pressure.[3] Snow made shut-in payments of $261.94 per well for 2015, 2016, and 2017. The payment for 2015 was accepted late in January 2016 because the first payment attempt made in July 2015 was rejected by the State Land Office (SLO) for an incorrect amount and improper shut-in forms. The payments for 2016 and 2017 were timely. However, no shut-in payments or forms were submitted by November 21, 2018. There is also no evidence in the record that Snow took advantage of the communitization agreement savings clauses for either well. The Commissioner sent Snow a letter in February 2019 giving notice that the Lease had "automatically expired by its own terms," effective February 26, 2019, because no payment had been received. The letter also explained that the "action will become non-appealable unless the party to whom it is directed initiates a contest proceeding within thirty (30) days." The Commissioner similarly sent letters informing Snow that the corresponding communitization agreements had been terminated.[4]

---

3Snow also shut-in Eddy GK 1 in 2010 by making a singular $261.94 payment.
4The letters terminating the communitization agreements for Eddy GK 1 and Eddy GK 2 state that termination was effective March 1, 2015, and June 1, 2015, respectively. The Commissioner's final order

**{8}** Snow responded with a letter including two $261.94 checks and shut-in payment forms seeking to reinstate the Lease and protest the termination on March 25, 2019.[5] Snow then filed an administrative contest petition in March 2019 asserting that the Lease had not expired and the Commissioner's action should be retracted. Snow later filed an amended petition in May 2019 that the corresponding communitization agreements also had not expired. The contest proceedings were consolidated and after a contest hearing, the hearing officer recommended denial of Snow's petition. The Commissioner adopted the hearing officer's report and denied Snow's contest in a final order.

**{9}** Snow appealed the Commissioner's final order to district court through Rule 1-074 NMRA. After a hearing, the district court remanded the case to the Commissioner to reinstate Snow's Lease, finding that the agency's final decision was not supported by substantial evidence and the agency did not act in accordance with the notice provision in Section 19-10-20.

**{10}** The Commissioner now appeals from the district court's order. The Commissioner's related petition for writ of certiorari for review of the district court's findings and direct appeal of due process issues were consolidated and we address all combined issues in this opinion.

## DISCUSSION

**{11}** On appeal, the Commissioner argues that the district court order remanding this matter for reinstatement of the Lease should be reversed because: (1) the decision that the Lease expired was supported by substantial evidence and made according to established law; (2) the Commissioner was not required to accept late or alleged overpayments to reinstate the Lease; and (3) Snow had no property interest in the expired Lease from which to assert a due process or takings claim. We begin with discussing why the Lease expired such that notice and an opportunity to reinstate were not required before turning to the constitutional claims.

## I.  Lease Expiration

**{12}** First, the Commissioner argues there is substantial evidence that Snow had not made a timely shut-in payment to maintain the Lease in the absence of production and the Commissioner's decision properly determined that the Lease had expired under established law. Snow contends that the Commissioner's decision was not supported by substantial evidence and not made in accordance with law because the Commissioner had to give Snow notice and an opportunity to cure before cancelling the Lease. We

---

finding that the agreements expired when the Lease expired in November 2018 conflicts with these termination dates, but the SLO admitted that the dates included in the letters are incorrect.

5Snow's 2019 letter claimed that it had already sent shut-in payment and forms in 2018 and that it was now resending because the prior payment had not been acknowledged. However, nothing in the record indicates that payment was sent before March 2019. Aside from Snow's claim that alleged overpayments from prior years should credit to 2018, Snow does not argue that payment was timely sent.

conclude that the Lease expired according to its terms and there was substantial evidence in the record to support the Commissioner's decision.

**{13}** On appeal from administrative decisions, "we will conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Therefore, "[w]e independently review the entire record of the administrative hearing to determine whether the [Commissioner's] decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 5, 140 N.M. 198, 141 P.3d 542 (alteration, internal quotation marks, and citation omitted); *see* Rule 1-074(R) (providing the district court's standard of review in appeals from administrative decisions). "The party challenging the ruling has the burden to demonstrate grounds for reversal." *Smyers*, 2006-NMCA-095, ¶ 5. We evaluate whether the whole record supports the results reached in the light most favorable to the decision, not whether a different result could have been reached. *See Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶¶ 10-11, 135 N.M. 30, 84 P.3d 78.

**{14}** In this case, the Lease's savings clause contains a shut-in provision allowing the Lease to continue in the absence of actual production if "a well [is] capable of producing gas in paying quantities" *and* the lessee "pay[s] an annual royalty." Snow shut-in both wells located on the Lease in 2015 and maintained the Lease by making shut-in payments for 2015, 2016, and 2017. However, the record shows that Snow did not make shut-in payments in 2018 and Snow admitted that as of 2019 the wells were still shut-in as they were not actively producing due to high pipeline pressure. Therefore, there is substantial evidence that the Lease was not producing and Snow did not make a shut-in payment in 2018 to maintain the Lease.

**{15}** Typically, oil and gas leases automatically terminate according to the habendum clause if production ceases after the primary term unless wells are shut-in. *See Maralex Res. Inc.*, 2003-NMSC-023, ¶¶ 9-10. In *Greer v. Salmon*, 1971-NMSC-002, 82 N.M. 245, 479 P.2d 294, our Supreme Court held that an oil and gas lease automatically terminated when a lessee failed to make shut-in royalty payments as authorized by the lease's savings clause. While the lessee argued that shut-in payments were essentially royalty payments and that nonpayment does not cause a lease to automatically terminate, *see id.* ¶ 6, our Supreme Court held that shut-in payments are only optional conditions in a lease to meet the requirements of a habendum clause, unlike traditional royalties which are required lease covenants. *See id.* ¶¶ 20-21. Our Supreme Court also made clear that the lessee could have saved the lease from automatic termination by paying the shut-in royalty, but the lease automatically expired when the well was shut-in without payment. *See id.* ¶ 23. Therefore, as was the case in *Greer*, Snow's Lease automatically expired since the wells were not producing and Snow did not make a timely shut-in payment according to the Lease's savings clause.

**{16}**     Although Snow argues that *Greer* is inapplicable here because it concerned a private oil and gas lease instead of a state lease, in applying the terms of a lease to determine that a lease expired when no shut-in royalty was paid, our Supreme Court reasoned that the clauses at issue in *Greer* were similar to those in typical state oil and gas leases, and we conclude they are similar to the clauses in Snow's Lease here.[6] *See id.* ¶¶ 7-8, 23; *see also* § NMSA 1978, § 19-10-6(C) (1987) (statutory shut-in provision allowing state leases to avoid expiration if a well is shut-in and the lessee timely pays an annual shut-in royalty). In fact, courts interpret oil and gas leases by applying the same rules governing other contract interpretation. *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844. Snow even admitted in administrative proceedings that in the absence of alleged overpayments, the Lease would have expired when shut-in payments were submitted in March 2019.

**{17}**     Further, because Snow's Lease automatically expired as opposed to being cancelled, the Commissioner was not required to send notice or give Snow an opportunity to cure the late payments. The Lease's cancellation clause sets out that the lessor may cancel the Lease "[u]pon failure or default of the lessee or any assignee to comply with any of the provisions or covenants hereof," only after the lessor mails "a notice of intention of cancellation specifying the default for which cancellation is to be made." *See* § 19-10-20 (statutory cancellation provision requiring notice before cancellation for nonpayment of rentals or nonperformance of requirements by lessee). If the lessee remedies the default within thirty days, the Lease cannot be cancelled. However, the Commissioner did not cancel Snow's Lease nor did Snow fail to make required rental payments or otherwise violate a lease covenant. The Lease automatically expired by its own terms such that the cancellation clause is inapplicable. *See Greer*, 1971-NMSC-002, ¶ 23 (holding that cancellation clause requirements are "not applicable to the habendum clause and its associated savings clauses").

**{18}**     Similarly, the corresponding communitization agreements also expired with the Lease. The agreement for Eddy GK 1 extended so long as there was production in paying quantities and the agreement for Eddy GK 2 extended so long as gas was capable of production in paying quantities. Shut-in royalty payments are "substitute[s] for royalty payments from production," *Maralex Res., Inc.*, 2003-NMSC-023, ¶ 11, but when payments are not made, wells are no longer considered to be shut-in or producing. *See Greer*, 1971-NMSC-002, ¶ 23. While the Commissioner admits that the termination dates included in the letters to Snow were incorrect, notice was not required

---

[6]Snow instead relies on *Abbott v. Armijo*, 1983-NMSC-065, 100 N.M. 190, 668 P.2d 306, to argue that the Lease was cancelled and not automatically terminated, thus requiring notice and an opportunity to cure pursuant to Section 19-10-20. However, *Abbott* concerned whether actual notice was required before cancelling a lease due to nonpayment of delay rentals under Section 19-10-20. *Abbott*, 1983-NMSC-065, ¶ 1. It did not consider whether late shut-in royalty payments trigger Section 19-10-20. Delay payments differ from shut-in royalties as they are required in some leases to pay an amount per acre annually to postpone drilling during the primary lease term, not extend the lease past the primary term. *See HNG Fossil Fuels Co. v. Roach*, 1982-NMSC-156, ¶ 3, 99 N.M. 216, 656 P.2d 879. Snow's Lease does not contain a delay rental requirement, so *Abbott* does not apply here.

regardless. The agreements expired as of the missed shut-in payment deadline for the Lease.

**{19}** Therefore, Snow's Lease and corresponding communitization agreements automatically expired and the Commissioner was not required to give notice and an opportunity to cure before the expiration. The contest decision was supported by substantial evidence, not arbitrary and capricious, and not otherwise contrary to law.

## II.      Reinstatement

**{20}** Next, the Commissioner argues that there is no statutory right to or agency policy for reinstating the expired Lease, even if Snow had overpaid on prior shut-in payments. Snow argues that based on SLO employee testimony at administrative proceedings, there are unwritten reinstatement factors that the Commissioner arbitrarily failed to consider below when deciding not to reinstate the Lease. Snow also argues that it paid double the required shut-in payment amount for 2015, 2016, and 2017, and these overpayments should have been credited to 2018. Even assuming without deciding that Snow overpaid in previous shut-in payments, we conclude that the Commissioner had no duty to reinstate Snow's lease.

**{21}** Although Snow argues that NMSA 1978, Section 19-7-59(C) (2007) requires the Commissioner to accept any alleged overpayments and reinstate the Lease, it does not apply here. Section 19-7-59(C) states that if "money erroneously paid was for royalty due under a lease, then, . . . the lessee may either request a refund or may recoup the money by deducting an equivalent amount from subsequent royalty payments due." As our Supreme Court has explained, shut-in payments are not typical royalties and "differ[] from the royalty obligation of 1/8th, which is an express covenant." *Greer*, 1971-NMSC-002, ¶ 17. In fact, our Supreme Court reasoned in *Greer* that "once a lease has automatically terminated" after shut-in payments were not made, "it cannot be revived." *Id.* ¶ 24. Therefore, contrary to Snow's contention that Section 19-7-59(C) applies, shut-in payments are not royalties under this provision and Snow has not established that the Commissioner was required to apply the alleged overpayments as credit for 2018 shut-in payments.[7]

**{22}** Therefore, the Commissioner's decision to not reinstate Snow's Lease was not arbitrary and capricious. *See Rio Grande Chapter of Sierra Club,* 2003-NMSC-005, ¶ 17 ("A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or

---

[7]Although Snow refers to SLO employee testimony about unwritten reinstatement factors, Snow provides no authority in support of its argument that the Commissioner arbitrarily failed to consider the factors or any authority that supports its assertion of a right to have an expired oil and gas lease reinstated upon receipt of late payments. Where a party cites no authority to support an argument, we may assume no such authority exists and will not review the issue on appeal. *See State ex rel. Off. of State Eng'r v. Lewis*, 2007-NMCA-008, ¶ 74, 141 N.M. 1, 150 P.3d 375. Accordingly, we decline to address Snow's contention that the Commissioner was required to consider purported lease reinstatement factors upon receiving Snow's late shut-in payment.

without a rational basis, when viewed in light of the whole record."). Accordingly, we reverse the district court's order requiring reinstatement of the Lease.

## III.    Property Interests

**{23}**    Finally, the Commissioner argues that Snow's property interest in the Lease automatically expired under its own terms such that there was no right to due process or just compensation after the Lease expired.[8] Snow argues that its property interest was terminated without notice and opportunity to be heard in violation of due process rights. Snow also argues that the termination resulted in an unconstitutional taking without just compensation. We conclude that Snow had no property interest in the Lease after it expired and therefore Snow has no basis on which to assert a due process or takings challenge.

**{24}**    We review constitutional questions of law de novo. *See Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivation of property absent adequate procedural safeguards. U.S. Const. amend. XIV, § 1. "At a minimum, procedural due process requires that before being deprived of life, liberty, or property, a person or entity be given notice of the possible deprivation and an opportunity to defend." *Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 14, 114 N.M. 103, 835 P.2d 819. The Takings Clause of the Fifth Amendment to the United States Constitution additionally prevents the government from taking private property without paying just compensation to the owner. U.S. Const. amend. V.[9]

---

8The Commissioner also argues that the district court did not rule on a due process argument and Snow did not develop a takings argument such that the hearing officer or district court could consider it. "In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791; Rule 12-321(A) NMRA. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue." *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. In this case, Snow asserts that the constitutional issues were preserved in arguments at the administrative hearing, in briefing, and at the hearing before the district court. Though discussion of this issue at the district court was vague, Snow does point us to where these arguments were raised below such that we can resolve them here. *See Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 28, 119 N.M. 532, 893 P.2d 428 (deciding that an argument was preserved when "[a]lthough [a party's] due process arguments were not a model of clarity, and certainly could have been made with more specificity, they were sufficient to alert the trial court and opposing counsel to the substance of the argument being made"), *overruled on other grounds by Cahn v. Berryman*, 2018-NMSC-002, 408 P.3d 1012.

9The New Mexico Constitution also guarantees that "[n]o person shall be deprived of life, liberty or property without due process of law," N.M. Const. art. II, § 18, and "[p]rivate property shall not be taken or damaged for public use without just compensation." N.M. Const. art. II, § 20. However, the parties do not argue that the New Mexico Constitution affords greater due process or takings protections than the federal counterpart, thus we apply the federal constitution here. *See Maso v. N.M. Tax'n & Revenue Dep't*, 2004-NMSC-028, ¶ 5, 136 N.M. 161, 96 P.3d 286 (declining to consider whether the New Mexico Constitution affords greater protections because "under our interstitial approach to interpreting the State

**{25}** "To have a property interest . . . a [party] clearly must have more than an abstract need or desire for it. [It] must, instead, have a legitimate claim of entitlement" to that interest. *N.M. Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 13, 363 P.3d 1176 (internal quotation marks and citation omitted). "[A] grant or reservation of the underlying oil and gas, or royalty rights provided for in a mineral lease as commonly used in this state, is a grant or reservation of real property." *Uhden v. N.M. Oil Conservation Comm'n*, 1991-NMSC-089, ¶ 8, 112 N.M. 528, 817 P.2d 721 (internal quotation marks and citation omitted). However, as discussed above, Snow's Lease automatically expired according to its own terms when Snow did not make a timely shut-in payment in 2018. *See Greer*, 1971-NMSC-002, ¶ 23 (holding that an oil and gas lease automatically expired according to the terms of its habendum and savings clauses when shut-in payments were not made). Once the Lease expired, it could not be revived. *See id.* ¶ 24. Therefore, Snow had no protected property interest in the expired Lease, and no denial of its due process rights occurred. *See Santa Fe Expl. Co.*, 1992-NMSC-044, ¶ 19 (concluding that there was no violation of due process where no property right was implicated).[10]

**{26}** Additionally, because Snow had no property interest in the expired Lease, Snow had no property that could be the subject of a takings claim. *See* N.M. Const. art. II, § 20 (prohibiting takings of private property without just compensation); *State ex rel. Highway Comm'n v. Gray*, 1970-NMSC-059, ¶¶ 12-17, 81 N.M. 399, 467 P.2d 725 (explaining that expectations of renewal or continuing possession of a lease alone are not a sufficient interest to result in a taking requiring compensation).

**{27}** Therefore, we conclude that there was no violation of Snow's due process rights and no taking requiring just compensation.

**CONCLUSION**

**{28}** For the foregoing reasons, we reverse and remand to the district court for entry of an order affirming the Commissioner's order upholding the expiration of Snow's Lease.

---

Constitution, a party must fairly invoke a ruling that our constitution provides greater protection than its federal counterpart," and the parties did not do so).

10Even if we were to assume that Snow did have a remaining property interest in the Lease, the Commissioner's 2019 letter informed Snow that it could challenge the decision by initiating contest proceedings within thirty days pursuant to 19.2.15.9 NMAC, which sets out that "any persons or entities aggrieved by an agency determination shall have the right to a contest." *See Santa Fe Expl. Co.*, 1992-NMSC-044, ¶ 14 (explaining that "procedural due process requires . . . notice of the possible deprivation and an opportunity to defend"). Snow has not established that these proceedings were insufficient to satisfy procedural due process requirements. *See Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 37, 289 P.3d 1232 ("In order to assert a procedural due process claim . . . , a plaintiff must establish deprivation of a legitimate liberty or property interest and that [they were] not afforded adequate procedural protections." (internal quotation marks and citations omitted)). Therefore, we decline to address the issue further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining that we will not review unclear or undeveloped arguments on appeal).

**{29}** IT IS SO ORDERED.

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KRISTOPHER N. HOUGHTON, Judge**